IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil No. 3:08-cv-00136-RV-EMT |
| ) | |
| PINNACLE QUEST INTERNATIONAL et al., | |
| ) | |
| ) | |
| Defendants. ) | |

### ORDER GRANTING A PRELIMINARY INJUNCTION

Upon motion by Plaintiff, the United States of America, the Court makes the following findings of fact and conclusions of law and enters this preliminary injunction:

### Standards for Preliminary Injunction

Under 26 U.S.C. § 7408, a tax-scheme promoter may be enjoined if a court finds "(1) that the person has engaged in any conduct subject to penalty under section 6700 (relating to penalties for promoting abusive tax shelters) . . . [and] (2) that injunctive relief is appropriate to prevent recurrence of such conduct." 26 U.S.C. § 7408 (2006). Here, the facts establish that: (1) Pinnacle Quest International (PQI), the named members of its Executive Council,[1] and Synergy Productions International, Inc. (SPI) engaged in conduct that subjects them to

---

[1] The individual Defendants referred to hereinbelow as members of PQI's Executive Council are: Claudia Hirmer, S. Anthony Larson, Armand Bright, Douglas Hagerty, Michael Leonard, Arnold Manansala, Nadine Griffin, Ellen Stubenhaus, Dover Perry, Joseph McPhillips, Lee Williams, and Michele Brown.

penalty under 26 U.S.C. § 6700; and (2) an injunction is necessary and appropriate to prevent recurrence of such conduct.

Because 26 U.S.C. § 7408 expressly authorizes the injunction, these entities and individuals may be preliminarily enjoined without considering the traditional equitable prerequisites. United States v. Estate Preservation Servs., 202 F.3d 1093, 1098 (9th Cir. 2000); United States v. Gleason, 432 F.3d 678, 682 (6th Cir.2005). Because of the need to stop ongoing harm a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits. A party is thus not required to prove his case in full at a preliminary-injunction hearing.

Under 26 U.S.C. § 7408, the government must prove five elements to obtain an injunction against conduct subject to penalty under 26 U.S.C. § 6700. The government must show:

> (1) PQI, its Executive Council, and SPI organized or sold, or participated in the organization or sale of, an entity, plan, or arrangement;
>
> (2) In connection therewith PQI, its Executive Council, and SPI made or caused to be made false or fraudulent statements concerning the tax benefits to be derived from the entity, plan, or arrangement;
>
> (3) PQI, its Executive Council, and SPI knew or had reason to know that the statements were false or fraudulent;
>
> (4) The false or fraudulent statements made by PQI, its Executive Council, and SPI pertain to a material matter; and
>
> (5) An injunction is appropriate to prevent recurrence of this conduct.

26 U.S.C. §§ 6700(a), 7408(b) (2006).  The government must prove each element by a preponderance of the evidence.  Estate Preservation Servs., 202 F.3d at 1097.

     Internal Revenue Code § 7402(a) grants federal district courts broad authority to issue orders of injunction and to render such judgments as may be necessary or appropriate for the enforcement of the internal revenue laws.  An injunction under § 7402 can be issued "in addition to and not exclusive of any and all other remedies of the United States in such courts or otherwise to enforce such laws."  It manifests the "congressional intention to provide the district courts with a full arsenal of powers to compel compliance with the internal revenue laws."  Brody v. United States, 243 F.2d 378, 384 (1st Cir. 1957); see also United States v. Ernst & Whinney, 735 F.2d 1296, 1301 (11th Cir. 1984).  In addition to the requirements for a statutory injunction prescribed by section 7402, the moving party must also demonstrate that the traditional requirements for equitable relief exist.  Ernst & Whinney, 735 F.2d at 1301.  In general,

> a district court may grant preliminary injunctive relief when the moving party shows that: (1) it has a substantial likelihood of success on the merits of the underlying case when the case is ultimately tried; (2) irreparable injury during the pendency of the suit will be suffered unless the injunction issues immediately; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest.

Alabama v. U.S. Army Corps of Engineers, 424 F.3d 1117, 1128 (11th Cir. 2005); see also United States v. Kaplowitz, 201 Fed. Appx. 659, 661 (11th Cir. 2006) (per

curiam) (applying those factors in upholding an preliminary injunction granted under section 7402).

## Findings of Fact

1. PQI is an organization that arose out of the now-defunct Institute of Global Prosperity. PQI was founded by former Global Prosperity organizer David Struckman and Global Prosperity salesperson Claudia Hirmer using Global Prosperity's website, sales database, and sales force.

2. PQI is operated out of Hirmer's home in Fort Walton Beach, Florida.

3. PQI is operated by an Executive Council. The Executive Council consists of approximately fifteen to twenty-five PQI salespeople.

4. The Executive Council is responsible for administering and operating PQI, including determining what other individuals or entities PQI will allow to present goods or services to PQI customers at PQI-hosted conferences.

5. The following Defendants are now or were in the past members of PQI's Executive Council, and in that role actively participated in managing and directing PQI's questionable activities:

    - Claudia Hirmer
    - Armand Bright
    - S. Anthony ("Tony") Larson
    - Douglas Hagerty
    - Michael Leonard
    - Arnold Manansala

- Nadine Griffin
- Ellen Stubenhaus
- Dover Perry
- Joseph ("Joe") McPhillips
- Lee Williams
- Michele Brown

6. SPI is the PQI division that brings PQI promotions to PQI customers. SPI organizes PQI's conferences, SPI ships PQI's products to customers, and PQI's sales force orders PQI products for customers exclusively through SPI.

7. PQI sells three products, called Q1, Q2, and Q3. PQI and SPI sell and distribute these products through a multilevel marketing system.

8. PQI's operation is extensive: From 2002 to 2006, a team of 830 Qualified Consultants sold PQI products to over 11,500 customers. During this same period, Qualified Consultants earned commissions of $38 million, and PQI received gross receipts of $16 million.

9. PQI sells Q1, Q2, and Q3 through a large network of salespeople called "Qualified Consultants," who are compensated within a multilevel marketing structure. PQI's multilevel marketing structure gives Qualified Consultants strong incentives to sell more PQI products and attract new Qualified Consultants to PQI.

10. For each Q1 sold to a customer at $1,350 the Qualified Consultant receives $1,000. For each Q2 conference ticket sold for $7,500 the Qualified Consultant receives between $5,000 and $6,000. For each Q3 conference ticket sold for $18,500 the Qualified Consultant receives $12,000. For all three products, PQI receives the balance.

11. PQI's Q1 product consists of 21 audio compact discs, each of which contains an interview of a person who PQI touts as an expert in a particular subject matter. PQI claims its Q1 is an educational course in non-traditional information.

12. The individuals who speak on PQI's Q1 audio course include Bill Benson, purveyor of the discredited Reliance Defense Package; Dan Shaw, a representative of IMF Decoder; and Sherry Peel-Jackson, a convicted tax defier. These individuals make false and fraudulent statements about the internal revenue laws on PQI's Q1 audio course.

13. When a customer purchases Q1, the customer gains access to PQI's "Online Resource Center," which is hosted on PQI's website and contains a collection of false statements about federal tax laws.

14. PQI's two other products, Q2 and Q3, are conferences at which PQI invites other individuals and entities, known as vendors, to speak to PQI customers in order to advertise the products and services those individuals or entities sell to PQI's customers.

15. PQI, acting through its Executive Council, establishes mutually beneficial exclusive-dealing arrangements the PQI vendors. These arrangements give the vendors permission to hawk their wares to PQI customers.

16. PQI and its Qualified Consultants advertise exclusive access to the goods and services of PQI vendors, who are billed as "experts," as part of the wealth-building strategy PQI sells.

17. PQI's Executive Council claims to solicit in-depth information from potential vendors, and votes on whether or not to allow those vendors to sell their products to PQI customers, a process which PQI refers to as "aligning with a resource."

18. As part of this "aligning" process, vendors are required to certify that they will only market to PQI customers those products PQI's Executive Council has specifically approved.

19. In addition to only selling approved products, vendors must agree that they will sell their products only to individuals who have purchased at least Q1 from PQI.

20. Despite the detailed information elicited from each PQI-approved vendor about its goods and services, PQI allows vendors promoting fraudulent tax schemes to its customers and to present at Q2 and Q3 conferences.

21. Several of vendors who present at PQI's Q2 and Q3 conferences promote fraudulent tax schemes. Vendors who have promoted fraudulent tax schemes through PQI at Q2 and Q3 conferences include

>IMF Decoder, Bill Benson, and Southern Oregon Resource Center Educational Services (SORCE).

22. IMF Decoder was a PQI vendor. During 2004 and 2005, PQI customers could purchase the services of an organization called IMF Decoder; during 2005 IMF Decoder only made its fraudulent scheme available to PQI customers.

23. IMF Decoder falsely told PQI customers that they are not required to pay federal income taxes unless they live in a federally-administered territory or are engaged in an excise-taxable activity. IMF Decoder falsely stated that the IRS inserts codes into taxpayers Individual Master Files (IMF) that indicate the taxpayer resides in a federal territory or is engaged in an excise-taxable activity so as to create a federal income tax liability where none otherwise would arise.

24. IMF Decoder advertised to PQI customers at PQI conferences, on PQI-organized conference calls, and in other promotional materials that it could help customers remove these allegedly fraudulent codes in order to eliminate the customer's federal income tax liability.

25. PQI customers purchased IMF Decoder's services in order to avoid paying their federal income tax liabilities.

26. SORCE was another PQI vendor. SORCE sold a fraudulent asset protection plan and a fraudulent disenfranchisement scheme to PQI customers.

27. Through the "asset protection" scheme, SORCE helps people unlawfully evade federal tax and tax-collection by helping them create bogus entities to which the customers transfer and hide their income, assets, and businesses, while still maintaining complete control over them. SORCE falsely tells customers that income generated by their transferred businesses and assets is not taxable. To help their customers accomplish these fraudulent transfers, SORCE provides its customers with instructional materials, guidance, and staff support.

28. Through the "disenfranchisement" scheme, SORCE falsely tells customers that the federal income tax system is voluntary, and that customers can opt out of their federal income tax obligations by revoking their social security numbers and other government identification numbers.

29. PQI investigated SORCE's tax schemes and approved them for sale to PQI customers.

30. PQI customers purchased SORCE's fraudulent schemes in order to avoid paying their federal income taxes.

31. Bill Benson formerly marketed his Reliance Defense Package through PQI, including at PQI conferences and on PQI's Q1 audio course.

32. Benson promised PQI customers that he could help them avoid criminal prosecution for non-payment of federal income taxes by showing the customer how to properly introduce documents in court proceedngs that

       purportedly show that the Sixteenth Amendment to the United States Constitution was not properly ratified.

33. PQI promoted Benson's scheme even though Benson's legal position has consistently been rejected as frivolous and that Benson himself was convicted for willful failure to file in spite having raised the arguments presented in his Reliance Defense Package.

34. Sherry Peel Jackson is a convicted tax defier who advances her frivolous tax arguments on PQI's Q1 audio course. At PQI's June 2004 Q2 conference in Cabos San Lucas, Jackson also promoted a tax-fraud product known as the "861 Evidence Disc," which purports to show why U.S. citizens are not required to pay federal income taxes. Jackson also spoke on pre-recorded phone calls available to PQI Qualified Consultants as a tool to recruit new PQI members.

35. SPI is the part of PQI responsible for delivering the Q1 audio course to customers and arranging the Q2 and Q3 conferences.

36. PQI and the vendors whose products PQI promotes harm the United States by depriving it of income tax revenue it would otherwise collect and by encouraging non-compliance with the federal income tax laws.

37. PQI and its vendors have deprived the United States of substantial amounts of federal income tax revenue. Each customer who purchased SORCE's services has deprived the United States, on average, of $22,576 of forgone revenue per customer per year. Over the 350 known

SORCE customers, that yields a total annual loss to the United States of $7,901,600.

38. Another PQI vendor, IMF Decoder, has sold its tax-fraud products in more than 40 states. The IRS has determined from audits of IMF Decoder's customers a total loss of revenue of approximately $4.9 million caused by its customers' failure to file tax returns and pay income taxes. Additionally, because IMF Decoder's customers filed numerous frivolous and harassing FOIA requests, the IRS has also had to devote substantial resources to processing these requests.

39. In addition to forgone revenue, the United States is harmed because it must dedicate scarce resources to identifying and auditing PQI and PQI's vendors' customers. Identifying and auditing all present and future PQI customers may be impossible, which may result in a permanent loss to the United States Treasury.

40. Customers are harmed because they have paid for erroneous tax advice, as a result of which many individuals have not filed federal income tax returns, thereby subjecting themselves to possible penalties and interest.

## Conclusions of Law

41. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1340 and 1345 and 26 U.S.C. §§ 7402(a) and 7408.

42. Venue is thus proper in this Court under 28 U.S.C. §§ 1391 and 1396.

43. I.R.C. § 7408 authorizes a district court to enjoin any person from engaging in conduct subject to penalty under I.R.C. § 6700 if injunctive relief is appropriate to prevent recurrence of that conduct.

44. Section 6700 imposes a penalty on any person who organizes or participates in the sale of a plan or arrangement and in so doing makes or furnishes a statement with respect to the allowability of any deduction or credit, the excludability of any income, or the securing of any tax benefit by participating in the plan or arrangement which that person knows or has reason to know is false or fraudulent as to any material matter.

45. PQI, its Executive Council, and SPI organize two similar tax-fraud arrangements.  First, PQI, its Executive Council, and SPI sell customers the Q1 audio course that contains false statements about the internal revenue laws, but also provides exclusive access to PQI-approved vendors of tax fraud schemes, such as IMF Decoder, SORCE, and Bill Benson.

46. Second, PQI, its Executive Council, and SPI organize Q2 and Q3 conferences at which PQI allows tax-fraud promoters to hawk their wares.  This is a plan or arrangement within the meaning of 26 U.S.C. § 6700 because PQI, its Executive Council members, and SPI organize these conferences, approve vendors to promote fraudulent tax products

at the conferences, sell customers admission to the conferences, and receive a portion of the proceeds.

47. PQI, its Executive Council, and SPI make false statements about the tax benefits to be derived from these arrangements in two ways. First, the Q1 audio course contains false and fraudulent statements about the internal revenue laws and the benefits that can purportedly be derived from using vedors' products. Second, PQI, its Executive Council, and SPI organize fora at which vendors of tax fraud schemes are knowingly allowed to present false and fraudulent statements about the benefits that can purportedly be derived from using their schemes.

48. PQI, its Executive Council, and SPI know or have reason to know that their these statements are false or fraudulent. The principals of Global Prosperity have been convicted for conspiracy to defraud the government in connection with the tax schemes they promoted through Global Prosperity.

49. Under 26 U.S.C. §6700, a court may infer the knowledge a reasonable person in the defendant's position would have discovered, Estate Preservation Servs., 202 F.3d at 1103, and may impute to the defendant knowledge "commensurate with the level of comprehension required by the speaker's role in the transaction," United States v. Cambell, 897 F.2d 1317, 1321-22 (5th Cir. 1990). A reasonable person in PQI's position—a promoter of investments it claims to investigate

thoroughly—would discover that schemes purporting to allow U.S. citizens to stop paying federal income taxes are not legal.

50. The false Statements made by PQI, its Executive Council, and SPI are "material" within the meaning of section 6700. If a particular statement has a substantial impact on the decision-making process or produces a substantial tax benefit to a taxpayer, the matter is properly regarded as "material" within the meaning of section 6700. United States v. Buttorff, 761 F.2d 1056, 1062 (5th Cir. 1985). Customers could, and in fact did, rely on false statements made on PQI's Q1 audio course and statements made by PQI vendors in deciding to not file federal income tax returns and to not pay federal income taxes.

51. Based on the history of Global Prosperity, and the disregard PQI, its Executive Council, and SPI have shown for the internal revenue laws, an injunction is necessary and appropriate to prevent a recurrence of the conduct.

52. An injunction is appropriate under 26 U.S.C. § 7402. A district court may grant an injunction under 26 U.S.C. § 7402 if it is necessary or appropriate for the enforcement of the internal revenue laws. Injunctions can only issue under section 7402 if the traditional bases for equitable relief are also satisfied.

53. The traditional bases for issuing equitable relief are (1) ia substantial likelihood of success on the merits of the underlying case when ultimately

    tried; (2) irreparable injury during the pendency of the suit unless the injunction issues immediately; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest.  <u>Alabama v. U.S. Amry Corps of Engineers</u>, 424 F.3d 1117, 1128 (11th Cir. 2005).

54. Based on the foregoing analysis, the United States has a substantial likelihood of prevailing on the merits of its underlying complaint for permanent injunction.

55. PQI is planning to hold two conferences within the coming year.  Each conference it holds increases the likelihood that new customers will buy tax-fraud products.  Given an already large number of PQI customers, adding new customers only serves to increase the likelihood that the United States will never fully recover the full amount of federal income taxes PQI customers owe.

56. PQI, its Executive Council, and SPI will not suffer any hardship by being ordered to obey the law.  They have no First Amendment interest in using false or misleading commercial speech.  <u>Greater New Orleans Broadcasting Ass'n v. United States</u>, 527 U.S. 173, 183-84 (1999).  They also have no protected First Amendment interest in their customer list because they are a purely commercial organization and are not an

  advocacy or educational group. <u>United States v. Bell</u>, 414 F.3d 474, 485 (3rd Cir. 2005).

57. An injunction prohibiting the use of false or misleading commercial speech to promote tax-fraud schemes is not adverse to the public interest.

For the foregoing reasons, it is therefore,

 A. ORDERED that pursuant to 26 U.S.C. §§ 7402 and 7408, PQI, the Executive Council members named hereinabove, and SPI are enjoined, for the pendency of this action, from directly or indirectly by means of false, deceptive, or misleading commercial speech:

 (1) Organizing, promoting, marketing, or selling (or assisting therein) any tax shelter, plan, or arrangement, including but not limited to those described in this motion, or any other tax shelter, plan or arrangement that incites or assists customers to attempt to violate the internal revenue laws or unlawfully evade the assessment or collection of their federal tax liabilities or unlawfully claim improper tax refunds;

 (2) engaging in activity subject to penalty under 26 U.S.C. § 6700, including making, in connection with the organization or sale of any plan or arrangement, any statement about the securing of any tax benefit that PQI, its Executive Council members, and SPI know or have reason to know is false or fraudulent as to any material matter, including but not limited to the

statements in the Q1 materials and other false statements described in this motion;

(3) engaging in conduct subject to penalty under any provision of the Internal Revenue Code, or engaging in any other conduct that interferes with the proper administration and enforcement of the internal revenue laws.

B.  ORDERED that PQI, its Executive Council members, and SPI shall provide a copy of this Court's findings and order to all present and former PQI customers and all current and former PQI vendors;

C.  ORDERED that a copy of this order be displayed on all websites over which any PQI, its Executive Council members, and SPI have control that pertains in any way to PQI, products or services offered by PQI vendors, or SPI, and this order be maintained on such websites until this Court has issued a final adjudication on the United States' complaint for permanent injunction against all Defendants;

D.  ORDERED that PQI, its Executive Council members, and SPI provide to the counsel for the United States a list of all speakers who will make any presentation of any duration at a conference organized by PQI, its Executive Council members, or SPI while this Court's preliminary injunction is in effect, which list shall include the name, phone number, and email address of each speaker and (except for the conference scheduled to begin May 18, 2008) be provided to counsel for the United States at least six weeks before the first day of the conference;

DONE AND ORDERED this 15th day of May, 2008

                                         /Roger Vinson\
                                         **ROGER VINSON**\
                                         **Senior United States District Judge**